UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KAREN MEMHARDT,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )        No. 4:17-CV-01411-AGF
                                   )
NATIONSTAR MORTGAGE, LLC, and      )
BANK OF AMERICA, N.A.,             )
                                   )
            Defendants.            )

## MEMORANDUM AND ORDER

This matter is before the Court on the motions (ECF Nos. 61 and 70) for summary

judgment filed by Defendants Bank of America, N.A. ("BANA") and Nationstar

Mortgage, LLC ("Nationstar").  For the reasons set forth below, BANA's motion for

summary judgment will be granted, and Nationstar's motion for summary judgment will

be granted in part and denied in part.

## BACKGROUND

For the purpose of these motions, the record establishes the following.  On June

21, 1993, Plaintiff obtained title to property at 530 Beacon Point Lane, Wildwood,

Missouri 63040 ("the property").  On November 12, 2001, Plaintiff conveyed the

property to her step-mother, Charlyne T. Skelton, via quit claim deed, with a transfer on

death clause to Christopher Memhardt (Plaintiff's son).

Defendants presented evidence that on June 28, 2004, Skelton obtained a loan in

the amount of $175,040 and executed a Note evidencing the loan.  The funds were used,

in part, to satisfy Plaintiff's prior loan on the property. The interest rate on the Note was 6.625% fixed and the term was 30 years. ECF No. 65-4. As security for the Note, Skelton executed a Deed of Trust naming BANA as the Lender.[1] ECF No. 63-5. The Deed of Trust contains a "no oral modification clause, which provides:

> Notice. Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

*Id.* at ¶ 27. Skelton also executed the Uniform Residential Loan Application, which stated that she was the only borrower, the sole owner of the property, and only her income was used to underwrite the loan. ECF No. 63-6.

Plaintiff contends that she and Skelton intended to be co-borrowers on the loan. Plaintiff would be making all of the payments on the loan. ECF No. 80-2 at 176. However, the loan documents presented at the closing only listed Skelton as the borrower, and it is undisputed that Plaintiff knew that she was not listed as a borrower on the loan documents. Skelton executed the documents provided to her, and Plaintiff was never later added to the loan as a co-borrower. ECF No. 80-1 at 105-106; ECF No. 80-7 at ¶ 5.

On April 6, 2009, Skelton transferred the property back to Plaintiff by quit claim deed, which Plaintiff did not immediately record. The loan, however, remained in

---

[1] BANA transferred its interest in the loan to Fannie May shortly thereafter. BANA was the servicer of the loan until servicing was transferred to Defendant Nationstar, effective April 1, 2013. Fannie May is not named as a Defendant to this litigation.

Skelton's name. Skelton died on September 14, 2009. Plaintiff testified that she wished to obtain a loan modification under the federal Home Affordable Modification Program ("HAMP"). She testified that BANA representatives told her over the telephone that she would qualify for loan modification, but first had to assume the loan. ECF No. 80-2 at 51.

On September 16 and 17, 2009, BANA sent letters addressed to Charlyne Skelton with instructions on how a non-borrower can assume the loan, which included the completion of a "Simple Assumption Agreement" and the provision of a copy of a "letter signed by the court appointing an executor." ECF No. 63, BANA SOF at ¶ 9. The Simple Assumption Agreement provided, inter alia, that "[the] Owner assumes the obligation to make payments due, and to perform all obligations of a borrower or mortgagor under the terms of the Note and Security Instrument executed in connection with the Loan . . . ." *Id.*

Plaintiff provided several of the loan assumption documents to BANA, including the Simple Assumption Agreement, but she never submitted the requisite probate document. Plaintiff asserts that Skelton's will was not probated because Skelton did not have any real property in her possession at the time of her death. BANA contends that assumption did not take place while BANA was servicing the loan, and Plaintiff has not presented evidence to the contrary. Plaintiff recorded the Quit Claim Deed executed by Skelton on November 22, 2010.

Servicing of the loan was transferred to Nationstar effective April 1, 2013. Plaintiff requested that her name be added to the account and provided Nationstar with

the Simple Assumption Agreement that she had previously executed for loan assumption with BANA.  On July 9, 2014, Nationstar granted her request by letter stating: "Based on the information you provided, the name on your account has been updated to add Karen Menhardt [sic] to the loan per the Simple Assumption."  ECF No. 73-14.

Thereafter, Plaintiff applied for a loan modification.  Plaintiff maintains that she was told by Nationstar representatives over the telephone that she would receive a modification under HAMP or a loan modification with a reduced rate.  On July 15, 2014, Nationstar advised Plaintiff that she was not eligible for a HAMP loan modification.  Then, on July 24, 2014, Nationstar offered Plaintiff a trial payment plan ("TPP") for a "standard modification."

On two separate occasions, Nationstar provided Plaintiff with permanent loan modification documents, and Plaintiff made several revisions, including revising the proposed interest rate.  In March 2015, Plaintiff acknowledged she had been told there would be no rate reduction.  On April 25, 2015, Nationstar denied Plaintiff's request for a loan modification because Plaintiff, by making revisions to material terms, had rejected Nationstar's modification offer.

Plaintiff's loan eventually went into default.  In her invasion of privacy claim, Plaintiff asserts Nationstar made harassing collection calls to her.  Plaintiff stated in her deposition that the collection calls took place at "various times over the loan," and that she was "absolutely" called by Nationstar more than ten times.  ECF No. 80-2 at 119-120.  She testified that the calls took place while she was in the process of applying for loan modification, and that the loan modification department was not communicating

with the collections department, which was demanding payment.  *Id.* at 124.  On April 5, 2017, Nationstar notified Plaintiff that it intended to foreclose on the property based on her default under the terms of the Deed of Trust.

On April 27, 2017, Plaintiff filed this lawsuit against Nationstar in state court.  On May 1, 2017, the lawsuit was removed to this Court, and Plaintiff thereafter amended her complaint to join BANA to the lawsuit.  She asserts the following in her amended complaint: (1) Violation of the Real Estate Settlement Procedures Act ("RESPA") (Nationstar only); (2) Violation of the Missouri Merchandising Practices Act ("MMPA") (both Defendants); (3) Violation of the Fair Debt Collection Practices Act ("FDCPA") (Nationstar only); (4) Invasion of Privacy (Nationstar only); (5) Wrongful Foreclosure – Anticipated (Nationstar only); and (6) Breach of Contract (both Defendants).  ECF No. 20.

On May 5, 2017, the parties filed a joint motion (ECF No. 8) to enter an agreed order for preliminary injunction, which the Court granted on May 8, 2017 (ECF No. 9).  Under the agreed order, Nationstar was enjoined from initiating foreclosure proceedings during the pendency of the lawsuit.  Plaintiff was ordered to pay into the Court registry $1,200 every month until the injunction is lifted.

## ARGUMENTS OF THE PARTIES

Nationstar argues that Plaintiff failed to identify any violation under RESPA because the statute does not require Nationstar to retroactively review and grant Plaintiff a loan modification request or correct damage done to Plaintiff's credit rating.  Next, Nationstar argues that summary judgment is warranted on Plaintiff's MMPA claim

because, inter alia, the MMPA does not apply to Nationstar; Plaintiff lacks standing to bring claims under the MMPA; loan modification negotiations do not give rise to an MMPA claim; and her claims are barred by the no oral modification clause contained in the Deed of Trust. As for the FDCPA claim, Nationstar contends it does not fall within the statute's definition of a debt collector and Plaintiff was not a consumer under the FDCPA.

Nationstar further argues that it is entitled to summary judgment on Plaintiff's invasion of privacy claim because its collection efforts did not rise to the level of "highly offensive" intrusion under Missouri law, and Plaintiff failed to present sufficient evidence in support of her claim. Nationstar argues that it should prevail on Plaintiff's anticipated wrongful foreclosure claim because no such cause of action exists under Missouri law. Lastly, with respect to the breach of contract claim, Nationstar contends that Plaintiff cannot present any evidence that Nationstar breached the terms of the Note or Deed of Trust, or that she was ever promised a modification with a reduced interest rate.

BANA contends that it is also entitled to summary judgment on Plaintiff's MMPA claim for reasons similar to those asserted by Nationstar; and to summary judgment on Plaintiff's breach of contract claim because no contract ever existed between BANA and Plaintiff.

In response, Plaintiff argues that there are genuine issues of material fact because Skelton's signature on the Deed of Trust is a forgery. Plaintiff asserted that the signature was a forgery for the first time in response to Defendants' motions for summary judgment. She made no such assertion in the complaint or during the course of

discovery. Plaintiff points to the fact that the Deed of Trust is signed "Charlyne T.S. Kelton,"[2] whereas all other signatures of Skelton are signed either "Charlyne T. Skelton" or "Charlyne Skelton." Plaintiff maintains that because Skelton's signature was forged, Defendants cannot rely on the no oral modification clause contained in the Deed of Trust to bar Plaintiff's claims. With regard to the RESPA claim, Plaintiff argues that Nationstar had a duty to do a thorough investigation of Plaintiff's concerns and correct any errors in servicing, which Nationstar failed to do. She also contends that she has a valid claim under the MMPA against Nationstar because Nationstar does not fall within the exemption and she has standing to bring such a claim because she assumed the loan. Plaintiff also argues that there is a genuine issue of material fact as to whether Nationstar was a debtor under the FDCPA because "the facts of this case are not so clear" regarding whether the loan was in default.

Plaintiff also maintains that although her anticipatory wrongful foreclosure allegations may have been mislabeled, she should still be able to proceed with her claim because Missouri courts have entertained lawsuits to enjoin foreclosure when the mortgagor has no legal basis for doing so.

With regard to BANA's summary judgment motion, Plaintiff argues that there is a genuine issue of material fact regarding whether she was the obligator on the loan because some of BANA's employees treated her as such. She contends that she has a valid breach of contract claim against BANA because she produced records showing that

---

[2] Although a reasonable juror might not view the signature as Plaintiff suggests, Plaintiff has averred that she is familiar with Skelton's signature and that it is a forgery.

she satisfied all of the requirements for loan assumption and should be considered by this Court to have assumed the loan in November 2010. She also maintains that BANA employees made oral promises with Plaintiff regarding loan modification, which are enforceable.

## LEGAL STANDARD

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015) (citation omitted). In opposing summary judgment, the non-movant may not "simply point to allegations" in the pleadings, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *Citizens Loan & Sav. Co. v. Weiser*, 621 F.2d 911, 913 (8th Cir. 1980). Rather, the non-movant "must identify and provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800 (citation omitted). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

"[S]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case." *Simpson v. Des Moines Water Works,* 425 F.3d 538, 542 (8th Cir. 2005) (quotation omitted). In order to establish the existence of a genuine issue of material fact, the plaintiff "must substantiate [her] allegations with sufficient

probative evidence that would permit a finding in [her] favor." *Id.* at 873. "A plaintiff may not merely point to unsupported self-serving allegations." *Bass v. SBC Commc'ns, Inc.,* 418 F.3d 870, 872 (8th Cir. 2005). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)).

## DISCUSSION

### Plaintiff's forgery claims

After BANA filed its motion for summary judgment, Plaintiff sought leave to amend her complaint. She asserted that while preparing to respond to the motion for summary judgment, Plaintiff realized that Skelton's signature on the Deed of Trust had been forged and the notary used on the Deed of Trust had no jurisdiction in Missouri to notarize a signature. ECF No. 66. Both Defendants opposed the motion, arguing that allowing such a late amendment would be prejudicial and require discovery to be re-opened. Defendants also argued that Plaintiff has had the allegedly fraudulent Deed of Trust in her possession since the inception of the lawsuit in April 2017, and that her motion for leave to amend was simply a tactic to avoid summary judgment.

The Court denied Plaintiff's motion to amend on the basis that she did not satisfy Rule 16(b)'s good cause standard for amendment of pleadings at such a late stage in the litigation. ECF No. 79. Now, in her opposition to Defendants' motions for summary judgment, Plaintiff submits an affidavit stating that the Deed of Trust is forged, which she contends creates an issue of fact.

"It is well-settled that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment." *Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999) (internal citation and quotation omitted). For example, a plaintiff may not use an affidavit contradicting prior deposition testimony to create a genuine issue of fact and defeat summary judgment. *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008); *see also Grissom v. Arnott*, No. 09-03244-CV-S-SWH, 2012 WL 1309266, at *20 (W.D. Mo. Apr. 16, 2012) (holding an affidavit that is inconsistent with portions of the plaintiff's complaint is permissible if the plaintiff is pleading in the alternative). In the context of post-dismissal motions to amend, the Eighth Circuit has held that "[m]uch of the value of summary judgment . . . would be dissipated if a party were free to rely on one theory in an attempt to defeat a summary judgment and then, should that theory prove unsound, come back . . . and fight on the basis of some other theory." *Morrison Enterprises, LLC v. Dravo Corp.*, 638 F.3d 594, 610 (8th Cir. 2011) (citation omitted) (alternation in original).

Here, Plaintiff is attempting to create an issue of fact by asserting that Skelton's signature on the Deed of Trust was forged. ECF No. 73-7 at ¶ 2. Generally, under Missouri law, Plaintiff's affidavit is sufficient to support an assertion of forgery. *See Gregg v. Georgacopoulos*, 990 S.W.2d 120, 125 (Mo. Ct. App. 1999) ("a showing that the witness was personally acquainted with the person and had seen him write his name a number of times is sufficient to establish the competency of the witness to give an opinion whether the signature is in the handwriting of that person").

However, Plaintiff's RESPA, MMPA, FDCPA, and breach of contract claims are all based on a valid Deed of Trust. Asserting that the Deed of Trust is forged, therefore, directly contradicts many of Plaintiff's claims against Defendants, and Plaintiff has not provided a good explanation why her claims of forgery could not have been offered sooner. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807 (1999) (holding that where a plaintiff's affidavit contradicts previous sworn testimony, the Court "should require an explanation of any apparent inconsistency").

Moreover, Plaintiff's current assertion appears to be contrary to her prior deposition testimony. In her deposition, Plaintiff asserted that the signatures on another loan application document were neither hers nor Skelton's. Plaintiff and her attorney referred to the signatures on the Note and Deed of Trust—offering them as illustrations of Skelton's true signature—to show how the signature on the other document differed. ECF No. 80-2 at 8-13.

"[A] party cannot create a 'sham' issue of fact in an effort to defeat summary judgment by filing an affidavit directly contradicting prior deposition testimony." *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) (citation omitted). Nor can Plaintiff evade summary judgment by "switching horses midstream and pursuing a new theory." *In re St. Jude Med., Inc., Sec. Litig.*, 629 F. Supp. 2d 915, 921 (D. Minn. 2009) (applying principle to a securities fraud complaint); *In re Midwest Milk Monopolization Litig.*, 529 F. Supp. 1326, 1342 (W.D. Mo. 1982), aff'd, 730 F.2d 528 (8th Cir. 1984) ("the value of summary judgment procedures would be dissipated if a party were free to shift theories in an effort to defeat a motion for summary judgment").

Equally important, there is no dispute that Plaintiff voluntarily signed the Simple Assumption Agreement, which was accepted and relied upon by Nationstar. This was an act undertaken at Plaintiff's own request, thereby obligating herself to the terms of the Deed of Trust. Thus, Plaintiff's forgery allegations cannot be used to defeat summary judgment.

## Violation of Real Estate Settlement Procedures Act (Count I)

"RESPA, or the Real Estate Settlement Procedures Act, is a federal, consumer protection law that imposes certain obligations and prohibitions on loan servicers with respect to the loans they service." *Hart v. Wells Fargo Home Mortg., Inc.*, No. 2:16-CV-04171-NKL, 2016 WL 5923429, at *4 (W.D. Mo. Oct. 11, 2016). More specifically, it applies to "federally related mortgage loans," addressing disclosures, notices of loan transfer, treatment of loan payments during transfer, duty to respond to borrower inquiries or "qualified written requests," and administration of accounts. 12 U.S.C. § 2605. *Id.*

In Count I, Plaintiff claims that Nationstar violated RESPA when it failed to: (1) provide Plaintiff with information concerning the status of her account and proof of payments; (2) investigate Plaintiff's concerns and provide a written response; and (3) give Plaintiff proper notice of foreclosures on different occasions. In her opposition to Nationstar's motion for summary judgment, Plaintiff focuses on Nationstar's failure to retroactively process her November 2010 loan modification request, properly seek out

information to resolve BANA's errors, and correct the damage done to Plaintiff's credit rating.[3]

Upon careful review of the record, Plaintiff cannot establish that Nationstar violated RESPA. Plaintiff does not cite, nor can the Court identify, any provisions of RESPA requiring Nationstar to retroactively review and grant Plaintiff a loan modification request. Moreover, it appears that Nationstar, upon the request of Plaintiff, did conduct an investigation and ultimately added Plaintiff's name to the loan on July 9, 2014. ECF No. 80-14. Further, despite Plaintiff's claims to the contrary, RESPA does not require Nationstar to "correct the damage" done to Plaintiff's credit rating. ECF No. 81 at 3. Instead, RESPA prohibits Nationstar from reporting overdue payments to any consumer reporting agency for 60 days after a borrower submits a written dispute. 12 U.S.C. § 2605(e)(3); 12 C.F.R. § 1024.35(e). Plaintiff cannot, therefore, establish that Nationstar violated RESPA. Accordingly, Nationstar is entitled to judgment on Count I of Plaintiff's amended complaint.

## Missouri Merchandising Practices Act (Count II)

"To successfully present a claim under the MMPA, a plaintiff must allege that she (1) purchased merchandise from the defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of defendant's use of one of the methods, acts or practices declared unlawful by the Act." *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 757 (W.D. Mo. 2015); *see also*

---

[3] Plaintiff in her deposition claims that Nationstar reported Plaintiff's failure to make payments, thereby "ruining [her] credit." ECF No. 73-2 at 113.

Mo. Rev. Stat. § 407.025.1. An essential element of an MMPA claim is that Plaintiff must have actually purchased or leased goods or services. *See Ziglin v. Players MH, L.P.*, 36 S.W.3d 786, 790 (Mo. Ct. App. 2001) (citing *Jackson v. Charlie's Chevrolet, Inc.,* 664 S.W.2d 675, 677 (Mo. Ct. App. 1984) ("A private cause of action is given only to one who purchases and suffers damage. One who attempts to purchase, but who never receives the goods or services nor pays anything of value cannot be said to have suffered damage by reason of any unlawful practice.").

The MMPA also exempts certain entities, including

"[a]ny institution, company, or entity that is subject to chartering, licensing, or regulation by the . . . director of the division of finance under chapters 361 to 369, or chapter 371, unless such directors specifically authorize the attorney general to implement the powers of this chapter or such powers are provided to either the attorney general or a private citizen by statute."

Mo. Rev. Stat. § 407.020.1 - .2(2); *see also Meyers v. Kendrick*, 529 S.W.3d 54, 62 (Mo. Ct. App. 2017).

Nationstar argues that Plaintiff cannot assert an MMPA claim against it because it is exempted under the MMPA, i.e. Nationstar is a Missouri licensee of the Missouri Division of Finance. In support, Nationstar submits its license, published on the State of Missouri website.

Plaintiff does not challenge the validity of Defendant's license. Instead, she argues that the MMPA authorizes private citizens to seek relief from a broad range of entities, and that the right to bring such an action overcomes the exemption. In support, Plaintiff submits an advisory letter from the Division of Finance, which reads: "Lastly, it is the position of the Division of Finance that § 407.025 gives your client a private cause

of action, which is an exception to §407.020.2(2)." ECF No. 81-1. The letter contains no reasoning for its opinion.

Several courts presented with this issue have found that § 407.025.1 does not act as an exception to § 407.020.2(2). *See, e.g.*, *Rashaw v. United Consumers Credit Union*, 685 F.3d 739, 745 (8th Cir. 2012); *Meyers v. Kendrick*, 529 S.W.3d 54, 62 (Mo. App. 2017); *Reitz v. Nationstar Mortg., LLC*, 954 F. Supp. 2d 870, 892–93 (E.D. Mo. 2013). The Court finds the reasoning of these cases to be persuasive and agrees that "[t]he contention that one provision of the MMPA completely negates another violates well-accepted principles of statutory construction." *Rashaw*, 685 F.3d at 745; *see also Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2017 WL 471574, at *10 (Feb. 3, 2017), *vacated in part on other grounds*, No. 2:16-CV-04170-NKL, 2017 WL 1498073 (W.D. Mo. Apr. 26, 2017). Accordingly, Nationstar is entitled to summary judgment on Plaintiff's MMPA claim.

Plaintiff's MMPA claim against BANA also fails because Plaintiff did not purchase or lease a good or service from BANA. The MMPA expressly requires a plaintiff to have purchased merchandise from the defendant. Plaintiff cannot establish that she was ever named as a borrower or co-borrower on the loan, or that she assumed the loan, while it was being serviced by BANA. Thus, Plaintiff fails to satisfy the first element required to bring an MMPA claim.

Moreover, Plaintiff's allegations against BANA concern its failure to provide Plaintiff with a loan modification, which cannot constitute actions taken "in connection with the sale . . . of any merchandise in trade or commerce." In *Watson v. Wells Fargo*

*Home Mortgage, Inc.*, 438 S.W.3d 404 (Mo. 2014), the Missouri Supreme Court held that actions taken during loan modification negotiation are not taken "'in connection with' the sale of the loan" because "[i]n engaging in loan modification negotiations, [defendant] was not enforcing the terms of the loan but rather contemplating creating a new agreement." *Id.* In *Watson*, like the case presently before the Court, there was no written agreement to modify the loan. Accordingly, the Court will grant BANA's motion for summary judgment on Plaintiff's MMPA claim.

**Fair Debt Collection Practices Act (Count III)**

"The FDCPA was designed to protect consumers from the 'abusive, deceptive and unfair debt collection practices' of debt collectors." *Worch v. Wolpoff & Abramson, L.L.P.*, 477 F. Supp. 2d 1015, 1018 (E.D. Mo. 2007) (citing 15 U.S.C. § 1692 *et seq.*). "In order to establish a violation of the FDCPA, a plaintiff must demonstrate that 1) plaintiff has been the object of collection activity arising from a consumer debt; 2) the defendant attempting to collect the debt qualifies as a debt collector under the [FDCPA]; and 3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Id.* (citations omitted). A "debt collector" under the FDCPA excludes any person attempting to collect any debt owed or due which was not in default at the time it was obtained by such person. 15 U.S.C. § 1692a(6)(F)(iii). "Therefore, mortgage servicing companies are not 'debt collectors' if they obtain the loan for servicing before default." *Stricklin v. Litton Loan Servicing, L.P.*, No. 4:13-CV-1354 CEJ, 2014 WL 1315961, at *1 (E.D. Mo. Apr. 2, 2014) (internal citations omitted).

Nationstar contends that it is not a "debt collector" under the FDCPA because the loan was not in default at the time Nationstar began servicing it. In support, Nationstar submits the affidavit of Fay Janati, senior assistant secretary of litigation support for Nationstar, and Plaintiff's payment history. ECF No. 72-3. In her affidavit, Ms. Janati states that she has reviewed Nationstar's books and records, and that "[t]he Loan was current at the time Nationstar began servicing it." ECF No. 72-3 at ¶ 16.

Plaintiff does not dispute the affidavit, but instead argues that "the facts of this case are not so clear as Defendant Nationstar asserts." ECF No. 81 at 10. However, she does not cite to any evidence in support of her position, nor to any evidence that directly contradicts Nationstar's evidence of the loan's delinquency status at the time it began servicing it.

The district court is not obliged to scour the record looking for factual disputes. *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007). However, "[e]ven where all of movant's statements of fact are deemed admitted, the Court must look at the entire record to determine whether summary judgment is warranted." *Fever v. Westin, St. Louis*, No. 4:12CV9 SNLJ, 2013 WL 5966046, at *2 (E.D. Mo. Nov. 8, 2013). "The Eighth Circuit has determined that when a plaintiff fails to respond adequately to a motion for summary judgment, a district court should not treat such a non-response as sufficient to dispose of the motion." *Id.* (citing *Canada v. Union Electric Co.,* 135 F.3d 1211, 1213 (8th Cir. 1997)). "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." *Id.* "In so ruling, even on an unopposed motion for summary

judgment, the court should review the facts in a light most favorable to the party who would be opposing the motion." *Id.*

Here, based on its own careful review, the Court cannot identify any documents in the record suggesting that the loan was in default at the time Nationstar began servicing. Accordingly, the Court will grant Nationstar's motion for summary judgment as to Plaintiff's FDCPA claim.

**Invasion of Privacy (Count IV)**

"A general right to privacy encompasses four separate privacy interests." *Philips v. Citimortgage, Inc.*, 430 S.W.3d 324, 331 (Mo. Ct. App. 2014). Invasion of these interests may result in four separate torts, and each individual tort has its own distinct set of elements. *Id.* "The right to privacy is breached when there is: (1) an unreasonable intrusion upon the seclusion of another; (2) the appropriation of the name or likeness of another; (3) unreasonable publicity given to another's private life; or (4) publicity that unreasonably places another in a false light before the public." *Id.* (internal citation omitted). Here, it appears that Plaintiff is proceeding on the theory of an unreasonable intrusion upon the seclusion of another.

"One who intentionally intrudes, physically or otherwise upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Sofka v. Thal*, 662 S.W.2d 502, 510 (Mo. 1983) (citing the Restatement (Second) of Torts § 652B). No mental or physical symptoms need be alleged. *Hunsinger*

*v. Gordmans, Inc.*, No. 4:16 CV 162 DDN, 2016 WL 7048895, at *3 (E.D. Mo. Dec. 5, 2016) (citing § 652B).

"Unwanted phone calls may constitute an invasion of privacy, though it is generally a question for the jury as to whether they are so intrusive that they would be highly offensive to a reasonable person." *Id.* (citing *Sofka,* 662 S.W.2d at 510). The Restatement (Second) of Torts has noted "[i]t is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded." Restatement (Second) of Torts § 652B at comment d. "Missouri courts have recognized the receipt of multiple phone calls a day for several weeks to be an invasion of privacy." *Id.* (citing *Philips v. Citimortgage, Inc.,* 430 S.W.3d 324, 331 (Mo. App. Ct. 2014); and *Sofka,* 662 S.W.2d at 510, 511 (finding six phone calls over the course of several months was insufficient as a matter of law to establish the tort of invasion of privacy)).

Here, Plaintiff does not respond to Nationstar's motion for summary judgment as to her invasion of privacy claim, nor does she include evidence of Nationstar's collection efforts in her statement of facts. However, as stated above, where an opposing party does not respond adequately to a motion for summary judgment, "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." *Fever*, 2013 WL 5966046, at *2.

In her deposition, Plaintiff stated that she "had people calling [her] all the time," which included "robocalling" her "over and over and over again." ECF No. 80-2 at 121. She maintained that she "absolutely" received more than ten collection calls from

Nationstar, and that she was usually at work when she received the calls. *Id.* at 119-120, 122. She claimed that she felt harassed by the calls, which were occurring while Plaintiff was in the process of applying for a loan modification. *Id.* at 123-24.

Nationstar argues that Plaintiff's allegations of "multiple" phone calls do not warrant a claim for invasion of privacy under Missouri law. However, it does not offer any evidence to refute Plaintiff's assertions regarding the number of calls made to Plaintiff over the relevant period of time. Accordingly, viewing the evidence in a light most favorable to Plaintiff, the Court will deny Nationstar's motion for summary judgment as to the invasion of privacy claim.

## Wrongful Foreclosure-Anticipated (Count V)

A tort action for damages for wrongful foreclosure lies against a mortgagee only when the mortgagee had no right to foreclose at the time foreclosure proceedings were commenced. *Dobson v. Mortg. Elec. Registration Sys./GMAC Mortg. Corp.*, 259 S.W.3d 19, 22 (Mo. Ct. App. 2008). A plaintiff seeking damages in a wrongful foreclosure action must plead and prove that when the foreclosure proceeding was begun, and there was no default on her part that would give rise to a right to foreclose. *Id.* (citations omitted). A plaintiff must "plead and prove such compliance with the terms of the deed of trust as would avoid lawful foreclosure." *Id.* There is, however, no cause of action for *anticipated* wrongful foreclosure in Missouri. *McWilliams v. J.P. Morgan Chase Bank, Nat. Ass'n*, No. 4:14-CV-768 CEJ, 2015 WL 430216, at *2 (E.D. Mo. Feb. 2, 2015); *Killion v. Bank Midwest, N.A.*, 987 S.W.2d 801, 811 (Mo. App. 1998); *see also Reese v. First Missouri Bank and Trust Co. of Creve Coeur*, 736 S.W.2d 371 (Mo. 1987) ("In our

view, our authorizing a cause of action for wrongful attempted foreclosure would effectively nullify the purposes for having the expeditious non-judicial foreclosure of deeds of trusts."). Thus, to the extent Plaintiff brings a claim for anticipated wrongful foreclosure, that claim fails as a matter of law.

If the Court were to construe Plaintiff's claims as seeking an injunction against foreclosure, the claim also fails. In cases seeking an injunction, the Court must consider: (1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981).

A property owner who disputes a lender's right or ability to foreclose upon her property may sue to enjoin the foreclosure sale from occurring. *See Cmty. Bank of Raymore v. Patterson Oil Co.*, 463 S.W.3d 381, 385 (Mo. Ct. App. 2015). An invalid deed of trust may for the basis of such a claim. *US Bank NA v. Watson*, 388 S.W.3d 233, 235 (Mo. Ct. App. 2012).

Plaintiff argues that Nationstar did not have a right to foreclose on her property because it failed to modify her loan and the Deed of Trust was invalid because Skelton's signature on it was forged. Plaintiff does not cite, nor could the Court identify, failure to modify a loan as the basis for asserting wrongful foreclosure and obtaining injunctive relief. As to Plaintiff's forgery claim, the Court has already held that the assertion of forgery will not be considered as grounds to defeat Defendants' motions for summary judgment. Further, Plaintiff signed the Loan Assumption Agreement, which required

Plaintiff to assume the obligations under the Deed of Trust. Accordingly, Nationstar's motion for summary judgment on Plaintiff's anticipated wrongful foreclosure claim will be granted.

**Breach of Contract**

Under Missouri law, a "breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014) (citing *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010)). "A valid contract contains the essential elements of offer, acceptance, and bargained for consideration." *Id.* (citations omitted).

It is undisputed that Plaintiff was never a named borrower on the loan and never assumed the loan while BANA was servicing the loan. Therefore, Plaintiff cannot establish that she entered into any contract with BANA, and thus her claim of breach of contract against BANA fails as a matter of law.

Further, even if, *arguendo*, Plaintiff could somehow establish that she was a party to the loan contract or some oral agreement to modify, her claim fails. "Vague references to unspecified 'agreements' are insufficient to state a claim for breach of contract. *Reitz v. Nationstar Mortg., LLC*, 954 F. Supp. 2d 870, 884 (E.D. Mo. 2013) (oral contract). The essential elements of a valid contract are offer, acceptance, and bargained for consideration. *Miller v. Dombek*, 390 S.W.3d 204, 207 (Mo. Ct. App. 2012); *Marzette v. Anheuser–Busch, Inc.*, 371 S.W.3d 49, 52 (Mo. Ct. App. 2012). "Consideration generally

consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Miller,* 390 S.W. 3d at 207 (quoting *Morrow v. Hallmark Cards, Inc.,* 273 S.W.3d 15, 25 (Mo. Ct. App. 2008). A promise to do that which a party is already legally obligated to do cannot serve as consideration for a contract. *Id.* at 208.

Here, Plaintiff argues that BANA's representatives told her that she would qualify for a loan modification in the 2% to 3% range. ECF No. 74 at 15. She seeks damages for BANA's failure "to provide modification as promised and to apply payments accordingly." Am. Compl. at ¶ 92. However, she provides no other evidence of the essential terms of the oral contract, nor does she point to evidence in the record of any bargained for consideration. Moreover, making loan payments under the terms of the existing loan and providing additional financial information or documentation does not constitute sufficient consideration for any oral promises to qualify as a binding contract between the parties entitling Plaintiff to a modified loan mortgage. *See Reitz*, 954 F. Supp. 2d at 887.

As to Nationstar, Plaintiff's amended complaint alleges that it breached the terms of the contract with Plaintiff when it failed to provide modification as promised, assessed late fees and other charges not permitted by the Note or Deed of Trust, misapplied funds, and improperly added charges to Plaintiff's account. ECF No. 20 at ¶¶ 82-84. Nationstar argues that it is entitled to summary judgment because Plaintiff failed to present evidence that Nationstar breached the terms of the Note and Deed of Trust, or that she was ever promised a modification with a reduced interest rate. Plaintiff responds that Nationstar

"should have corrected Defendant [BANA's] failure to modify her loan in 2010."[4] ECF No. 81 at 14.

Plaintiff does not cite, nor can the Court identify, any case law that would allow Plaintiff to assert a breach of contract claim against Nationstar for actions taken by BANA during a period of time predating Plaintiff's assumption of the loan. Further, Plaintiff's claims that Nationstar's representatives made oral promises to Plaintiff regarding loan modification fail for the same reasons set forth above.

However, Nationstar failed to address the other grounds for breach of contract claimed by Plaintiff, namely the improper assessment of fees and misapplication of funds in violation of the Deed of Trust. "We have repeatedly held that in the Eighth Circuit, a district court commits reversible error when it grants summary judgment on an issue not raised or discussed by the parties." *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003). Accordingly, the Court will deny Nationstar's motion to the extent it seeks summary judgment on the issue of improper fees and misapplication of funds. *See* Am. Compl. at ¶¶ 83-84.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Bank of America's motion for summary judgment is **GRANTED**. ECF No. 61.

---

[4]   Plaintiff admits that at the time she applied for a loan modification with Nationstar, she did not qualify. ECF No. 81 at 14.

**IT IS FURTHER ORDERED** that Defendant Nationstar Mortgage, LLC's motion for summary judgment is **GRANTED in part and DENIED in part**, as set forth more fully in this Order.  ECF No. 70.

All claims against Defendant Bank of America having been resolved, a separate Judgment as to Bank of America only shall accompany this Memorandum and Order.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 13th day of November, 2018.